UNITED STATES *v.* The PYROMETER INSTRUMENT Co. (No. 3918)[1]

United States Court of Customs and Patent Appeals, December 16, 1935

*Joseph R. Jackson*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.
*Siegel & Mandell* for appellee.

[Oral argument December 4, 1935, by Mr. Jackson; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The appellee made certain importations under the Tariff Act of 1930 of certain devices known as "pyrometers," which devices were classified by the Collector of Customs as "optical measuring instruments" and assessed with duty at the rate of 60 per centum ad valorem under the provisions of paragraph 228 (a) of said tariff act. Appellee protested said classification and assessment with duty in each instance, making various claims under different paragraphs of said act. It later amended its protests and claimed the pyrometers to be dutiable at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for. The several protests were consolidated for trial before the Customs Court. The United States Customs Court, First Division, sustained the claim of the protests under paragraph 397 and entered

---

[1] T. D. 48085.

judgment accordingly. From such judgment the Government took the appeal now before us.

In the court below appellee relied solely upon the claim of its protests under paragraph 397, and that is the only claim which is in issue upon this appeal.

It appears that the devices here involved are identical with those involved in the case of *United States* v. *Pyrometer Instrument Co.*, 21 C. C. P. A. (Customs) 376, T. D. 46910, Suit No. 3643, and the record in that case was incorporated into and made a part of the record in the instant case.

The appellee offered no testimony in the instant case; the Government introduced the testimony of one witness in its behalf, one John Anthony Scheick, said witness having also testified for the Government in said prior case. Before this court no appearance was made by counsel for appellee, and no brief has been filed in its behalf.

The pertinent parts of the competing paragraphs here involved read as follows:

PAR. 228 (a). * * * optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

In the case of *United States* v. *Pyrometer Instrument Co.*, *supra*, it was stipulated that the articles were in chief value of metal, and in the case at bar counsel agreed that "the articles are not composed of, nor plated with gold, silver, or platinum, and that they are not gold lacquered."

In said prior case the issue was whether said devices were dutiable as scientific instruments at the rate of 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1930, as claimed by the importer. This claim was sustained by the Customs Court, and upon appeal the judgment entered pursuant thereto was reversed by us. The finding of this court in that case was that the pyrometers were not scientific instruments, as claimed. We did not there pass upon the correctness of the collector's classification of the pyrometers there involved as optical measuring or testing instruments under said paragraph 228 (a), dutiable at the rate of 60 per centum ad valorem.

It will thus be seen that the issue in the instant case is different from that decided in said prior case.

The pyrometers in question are used in determining the temperature of objects, such as molten masses of ore, glass, etc., and the

Government's witness Scheick testified as follows as to the nature of the devices and their mode of operation:

* * * This optical pyrometer intercepts light which emanates from a molten mass, by the optical system called the objective system, which is located in the front of the instrument. That objective system intercepting the light emanating from the molten mass, forms an image within the plane of that instrument. On that plane is located an illuminated target. The energy for illuminating that target is received from a self-contained battery and light source. There is also located on the plane where this optical image is being formed, an optical filter, sometimes called a neutral filter, or a smoked-glass filter. The function of that filter is to reduce the intensity of the image formed by these objective lenses, so that an intensity match can be had between that image and the target, and both the image formed by the objective lenses and the plane of that target is made visible to the observer or operator of that instrument by an additional optical system in that called the eyepiece system, which focuses on that plane.

Upon being asked if the pyrometer would function properly without the lenses which are placed within it, said witness answered as follows:

No; without any one of its optical components the instrument is useless.

We would observe that there is nothing in the above-quoted testimony that is inconsistent with the testimony introduced by appellee during the trial of the prior case.

The decision of the Customs Court in the instant case was handed down on May 10, 1935. On May 27, 1935, this court decided the case of *Clara M. Ferner, Executrix, etc.* v. *United States*, 23 C. C. P. A. (Customs) 62, T. D. 47735. This case involved the classification of certain instruments called *spectrographic comparators* and others called *universal measuring machines;* these instruments were quite large and heavy, the largest weighing nearly 400 pounds. It appears from our opinion in that case that the instruments there involved

are designed to be and are used for the purpose of very accurate measurements and measurement comparisons, and especially are used for such close and accurate measurements as can not be made by hand and with the naked eye.

Further describing the instruments, we there said:

* * * All the devices comprise framework, plates, holders, and adjusting machinery for moving the objects to be measured past a scale of line measurements, and under a microscope or microscopes which are integral and essential features of the devices. * * *

Commenting upon the nature of the devices there involved, we said:

* * * Here the measurements can be ascertained only through the use of an optical instrument which directly aids the human eye. * * * The instruments at bar can be operated only in connection with the use of an optical instrument which, when being used, aids the human eye.

With respect to the construction of the term "optical measuring * * * instruments," as used in said paragraph 228 (a), we there said:

Regardless of the scope intended by the term "optical measuring * * * instruments" and without indicating a precise definition of that term, and with-

out suggesting everything which Congress might have contemplated would be provided for thereby, we feel certain that one of the instruments it intended to include therein was an instrument by which measurements were made, such as those involved in the consideration of the instant appeal, wherein optical devices and optical principles are involved and essential in making such measurements. * * *

We thereupon held that the instruments there involved were properly classified as optical measuring instruments.

We think the record in the case at bar establishes that the pyrometers here involved can be operated, for the purpose of ascertaining temperature measurements, only through the use of an optical system which, when being used, aids the human eye.

In other words, we think the pyrometers here involved come squarely within the class of instruments dealt with in said *Ferner* case, *supra*, so far as classification is concerned, and that, under the holding in that case, the involved pyrometers should be held to be properly classifiable and dutiable under said paragraph 228 (a) as optical measuring instruments, as they were classified by the collector.

For the reasons stated, the judgment of the United States Customs Court, First Division, is *reversed*.